A. J. ALWIN v. PHILIP LIESCH.[1]

May 23, 1902.

Nos. 12,975—(69).

**Publication Libelous on Its Face.**

In an action for libel it is *held* that the publication complained of by plaintiff is libelous and defamatory on its face, and actionable per se; and, further, that the trial court erred in refusing plaintiff's request to so instruct the jury.

Action in the district court for Brown county to recover $5,000 for libel. The case was tried before Webber, J., and a jury, which

[1] Reported in 90 N. W. 404.

rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Pierce & Harriott,* for appellant.

*Somerville & Olsen,* for respondent.

BROWN, J.

Action for libel. Defendant had a verdict in the court below, and plaintiff appeals from an order denying a new trial.

The only question we deem necessary to consider is whether the court erred in refusing to instruct the jury, as requested by plaintiff, that the publication complained of was libelous on its face. The court refused a request to so instruct the jury, and submitted the question to them to determine. This is the principal error complained of, and is the only one we deem of sufficient importance to require special mention. The complaint alleges that defendant is the publisher of a weekly newspaper called the Brown County Journal, printed and published in the city of New Ulm, and having a general circulation in that city and throughout Brown county; that on September 29, 1900, he falsely and maliciously published of and concerning plaintiff in his said newspaper a false and defamatory statement in the following language:

"MR. FISCHER'S PARTNER.
Editor's Note.

The Journal begs the consideration and indulgence of its readers this week. Mr. A. J. Alwin, in an infamous attack in a local paper upon a Journal and Volksblatt writer, compels a personal reply. It is largely personal, and therefore of no public interest. This space will hereafter be devoted to a more interesting subject than a dissection of Mr. Alwin. The writer would much prefer writing in a different vein, but, as Mr. Alwin could not appreciate other than the style followed herein, it is necessary to give him the medicine his disease demands. The Journal has the material at hand, which, if given publication, would startle the people. The facts, data, etc., have been voluntarily furnished us by friends in New Ulm and Springfield. These facts relate to A. J. Alwin, of this city. They are filed for future reference. The Journal hopes the occasion will not arise which will compel it to use the material referred to. This Mr. Alwin, whose interesting history of some years ago has been sent the Journal, made a coarse, vulgar, Alwinean attack in a local paper on Mr. Hay, of the Journal and Volksblatt, last week. Between blubbers and fits he says the

Journal man misrepresented things to him in order to secure a copy of a speech delivered by him.  *  *  *

Perhaps this man—we call him a man because he is made in the shape of one—cannot appreciate the fact that daily newspapers want matter when it is fresh. Perhaps he was ashamed of it, yet no one ever accused him of being troubled with sensitiveness in that respect. He was ashamed to father the monstrosity, the slippery, slimy, squirming thing which was conceived in iniquity, born in deceit, developed in degradation and shame, polluting all pure things that it reached, scorned by honest people, shunned by Christianity, and consigned to oblivion by the opinion of all Christian people. We can furnish dozens of affidavits of reputable people who heard the speech that it was exactly as published in the Journal. The speaker is excusable in a degree when he thinks his speech was 'doctored.' At times he was carried away by the sound of his own voice. He imagined he was soaring on the wings of eloquence, when as a matter of fact the 'wheels' only revolved a little more rapidly, the speaker increased the distortion of his face, he shouted at the top of his voice, and he gestured like a drunken Indian. We'll be charitable, and say he probably forgot what he was saying. The Journal and Volksblatt had, and still have, a complete report of the speech. It may yet be given greater circulation than even the conceited fop who delivered it ever hoped for.

Mr. Alwin says we were insincere when we complimented him. The spouter is mistaken. We complimented him as we would a glib poll parrot or a chattering monkey, could either of them understand. Mr. Alwin has learned his lines well, and he delivered them acceptably at times. The rehashing of phrases and the discoloring of familiar passages detracted greatly from their original beauty, but the speaker blurted them out with considerable ease, and with the sang-froid of their originator. Of course, one could not expect to hear a Webster when an Alwin spoke, any more than one would expect to hear a prima donna when a screech owl hoots, or see a donkey go at a thoroughbred pace. But could the donkey or the screech owl understand, we would compliment them. So, in all sincerity, we complimented Mr. Alwin. And this enemy of the churches of New Ulm speaks of vice feeding on virtue. This former partner of Ferdinand Fischer brazenly speaks of virtue and honesty. This brings up a reminiscence that is interesting. It recalls to remembrance a demented woman in a padded cell in the insane hospital at St. Peter. Does Mr. Alwin know why Mr. Fischer failed? He was his partner. He kept the books. He ought to know. Since he holds himself up as the virtuous end of a personal controversy he forced upon an editor of the Journal and upon the public, he should give the people proof of the virtue he claims. He forgets, if he ever knew, that gentleness is greatness as well as goodness.

Continuing, this strange bird that befouled its own nest speaks of a Christian community as if he formed a part of that body here. Lashed into a realization of his true position, he fawns like a puppet upon the public. He frowns upon Christianity as a baboon frowns at the moon, and he glowers at the churches as a monkey would peer at a planet. Seared by the acts of his own doing, and deadened and weakened by constant smothering, if there be a spark of conscience left he did not show it in his public communication last week. As faith is a higher virtue than reason, we can hope for little improvement in Alwin until he has been touched by the unseen hand, and is made to feel the error of his ways. When the prayers of a good old Christian couple are answered, the crowning glory of their joy will be a son redeemed,—saved from his own folly and the strange snares into which an erratic imagination and the influence of stronger minds has led him."

The complaint further alleges by way of innuendo that defendant intended by the article to charge that plaintiff had been guilty of dishonesty and disreputable conduct of so gross and disgraceful a character that, if made public, would subject him to public disgrace and infamy; that plaintiff in his business and co-partnership relations with one Ferdinand Fischer had wrongfully defrauded his partner, and caused his failure; and that his partner's wife was, on account of such dishonest and disreputable conduct, driven insane, and incarcerated in an insane asylum.

There can be no question but that the article complained of is libelous on its face. The law on this subject is that any written or printed words are actionable per se which tend to injure the reputation or good standing of a person, and thereby expose him to public hatred, contempt, and ridicule, or which tend to degrade him in society, lessen him in public esteem, or lower him in the confidence of the community, even though the words do not impute the commission of a crime or immoral conduct. Davis v. Hamilton, 85 Minn. 209, 88 N. W. 744, and cases cited. It is urged by counsel for defendant that the language of the article is in a measure ambiguous, and, fairly construed, susceptible of an innocent meaning, and that it does not necessarily expose plaintiff to hatred, contempt, or ridicule, nor lessen him in the estimation of the community. But the article is couched in language too plain to admit of concurrence in that contention. No fair-minded person can read

it and be impressed that plaintiff was being lauded or compli-
mented. It is denunciatory from beginning to end, fairly teems
with ridicule, and its whole tenor and effect was to expose plaintiff
to the hatred and contempt of his fellow men. There can be no
serious question as to this, and we hold, without further discus-
sion, that the article is libelous and defamatory on its face; and a
majority of the court are of opinion that the trial judge should
have so instructed the jury, and that the refusal to do so was error
for which a new trial must be granted. Trebby v. Transcript Pub.
Co., 74 Minn. 84, 76 N. W. 961.

The writer does not concur in this latter view. Ordinarily, the
question as to what is substantial justice in cases of this kind
is one almost wholly for a jury to determine. The question
whether the article complained of was libelous and susceptible of
the meaning attributed to it by plaintiff in his complaint was sub-
mitted to the jury together with the evidence offered by defendant
in extenuation or justification; and it seems to me, in view of the
facts disclosed by the record, that their verdict might be very
properly sustained. Plaintiff had attributed a particular meaning
to the article, and the trial was had upon the theory that the
meaning so ascribed to it was the one intended by defendant. Had
the court instructed the jury that the article was defamatory on
its face, it would necessarily have been an instruction to the effect
that it was defamatory in the respects claimed by plaintiff; and
beyond question the article does not charge, nor is the language
fairly susceptible of being construed as charging, that the wife of
plaintiff's partner, Mrs. Fischer, was made insane because of
plaintiff's dishonorable or disreputable conduct. But my Brethren
are of opinion that the question as to the defamatory character of
the article should not have been submitted to the jury to deter-
mine, but that the court should have instructed them that it was
defamatory as a matter of law; and in this legal proposition they
are sustained by Trebby v. Transcript Pub. Co., supra, and the
authorities generally.

We have examined the other assignments of error, and discover
nothing requiring special mention. No other error of sufficient

consequence to overturn the verdict is disclosed by the record, and none of the rulings complained of were prejudicial to plaintiff's rights.

Order reversed and a new trial granted.