STEVEN H. HUNTER, APPELLEE, V. ANNE MARIE
SORENSEN ET AL., APPELLANTS.

266 N. W. 2d 529

Filed June 7, 1978.  No. 41551.

Michael G. Helms for Schmid, Ford, Mooney, Frederick & Caporale, for appellants.

James W. Knowles of Knowles & Edmunds, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an action by plaintiff to recover damages arising from an automobile accident allegedly the result of negligence by the defendant, Anne Marie Sorensen, and imputed to the defendant, Reuben S. Sorensen, under the family purpose doctrine. Trial was to a jury. At the conclusion of all evidence the District Court, on plaintiff's motion, instructed the jury that the accident was proximately caused by the negligence of the defendants and directed it to return a verdict in favor of the plaintiff in the amount of $358.28 for his property damage. Thus, the only issue submitted to the jury was a determi-

nation of damages resulting from plaintiff's alleged injuries. The jury returned a verdict awarding plaintiff damages of $933.28. The District Court accepted the verdict and entered judgment thereon for the plaintiff together with costs of the action. Plaintiff filed a motion for a new trial which was granted by the District Court. Defendants appeal. We reverse the judgment of the District Court.

The District Court made the following notation concerning plaintiff's motion for a new trial: "The Court, being fully advised in the premises, finds the verdict returned by the jury is inconsistent, irregular, and contrary to the law as given to the jury in oral and written instructions. The Court further finds the verdict should be set aside, and the plaintiff should be entitled to a new trial on the limited issues of damages."

We have held that a trial judge may set aside a verdict whenever it is inconsistent. Olson v. Shellington, 162 Neb. 325, 75 N. W. 2d 709 (1956). In 66 C. J. S., New Trial, § 66, p. 197, it is stated: "Ordinarily, a verdict may and should be set aside and a new trial granted where it is self-contradictory, inconsistent, or incongruous, and such relief should, as a rule, be granted where more than one verdict are returned in the same action and they are inconsistent and irreconcilable."

In C. Aultman & Co. v. Reams, 9 Neb. 487, 4 N. W. 81 (1880), we held: "It is the duty of the jury to find a verdict according to the law as given in the instructions of the court. When they clearly violate this duty, the court should set aside their verdict." In Schumacher v. Lang, 160 Neb. 43, 68 N. W. 2d 892 (1955), we stated: "When the amount of damages allowed by a jury is clearly inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict."

The jury was instructed as follows concerning damages:

"In determining the Plaintiff Steven Hunter's damages, in addition to property damages, *if any you so find,* you must fix the amount of money which will fairly and reasonably compensate him for any of the following elements *he has proven by a preponderance of the evidence to have proximately resulted from the accident* in question:

"(1) The nature and extent of his injury or injuries;

"(2) The disability experienced to date, and reasonably certain to be experienced in the future;

"(3) The pain and suffering, mental or physical, experienced to date, and reasonably certain to be experienced in the future;

"(4) The reasonable expense of necessary medical care, treatment and services incurred to date; and

"(5) The value of working time, wages or profits, lost to date due to his inability or his diminished ability to work.

*"Whether any of the above elements of damage has been proven by a preponderance of the evidence is for you to decide.* You are not permitted to award or withhold damages by way of punishment or through sympathy." (Emphasis supplied.)

The evidence was as follows: At the time of trial, plaintiff was 26 years old and employed as an insurance sales agent. The accident occurred on the morning of December 19, 1975. Plaintiff's left knee hit the steering column during the course of the accident. He testified that the only symptom after the collision was that his knee felt bruised. He proceeded to work following the accident but by midafternoon decided to call it a day because of swelling in his knee. Plaintiff testified that during the next 2 weeks his knee seemed to "pop out of joint" three times. He testified that problems with his knee caused him to cancel appointments with prospective customers for the next 2 weeks and that he limited

himself to things which could be done in the office. On cross-examination he stated that he did paper work, which was part of his responsibility, during this period and admitted that it would have had to be done at one time or another. He estimated that he lost about $1,000 during the 2-week period after the accident "as a result of not working."

Plaintiff suffered an injury to the knee involved here in 1969 during a college football practice which required surgery for torn cartilage and ligaments. After this operation plaintiff stated that he strained his knee approximately three times and sought medical treatment on each occasion. In 1972, while stationed at Okinawa plaintiff again injured his knee while playing softball and had what is known as a "five-in-one" operation performed on it. Plaintiff injured or strained his knee again in 1974. Plaintiff testified that prior to the accident he had become accustomed to having to catch himself because of his knee going out. In the 9 months preceding the accident, plaintiff stated that he played some golf in the summertime and racquetball approximately three times per week.

On January 16, 1976, plaintiff was examined by Dr. Ries. Plaintiff stated he did not seek medical treatment earlier because he did not believe that his injury was serious enough to warrant it. Dr. Ries testified that plaintiff complained of pain and swelling of his knee and low back pain. Dr. Ries' examination revealed a full range of motion in plaintiff's back and knees and was negative in regards to a possible tear of the meniscus, cartilage damage, nerve involvement, slipped disc problems, and injury or trauma to the bones. There was no swelling of the knee at the time of examination. Dr. Ries' diagnosis was that plaintiff had a sprain of the left knee, a strain of the lumbar spine, and a contusion of the quadriceps muscle. He advised a program of physical therapy.

During April and May 1976, plaintiff stated that he played racquetball about five times but discontinued playing thereafter, not so much because of pain or discomfort from the knee, "but mainly because of the fact that no one was there to play with." He also played some golf during the summer of 1976. Plaintiff returned to Dr. Ries on July 9, 1976, for a further examination. Plaintiff told him that he did not seek therapy for his knee but did exercises instead at his home. Plaintiff stated that he no longer experienced pain or discomfort in the knee; it didn't give out on him any more; and that his back quit hurting. Dr. Ries stated that at this time he was of the opinion that the injury plaintiff sustained from this accident would have no permanent effect.

Around January 1977, plaintiff began playing basketball at the YMCA approximately three times per week. Plaintiff returned to Dr. Ries' office on March 29, 1977, and was examined by Dr. Mercier, a partner of Dr. Ries. Plaintiff stated that he had had swelling and pain in his knee for the past 3 or 4 months since he started playing basketball. An examination revealed some fluid in the knee. Internal rotation of the foot caused some pain. There was a possible tear of the lateral meniscus. Plaintiff was advised that he should not be playing basketball and told to rest his knee for a couple of weeks. Dr. Ries testified that prior to the accident plaintiff had a 20 percent permanent impairment of his leg, and that the accident caused him an additional 5 percent impairment. He stated that he believed plaintiff would have future problems with his knee. Plaintiff's bill for medical services by Drs. Ries and Mercier totaled $53.

Dr. Ries stated that ligaments and cartilage in the knee are generally torn by twisting-type motions such as those associated with activities such as basketball and racquetball and that it would be very unlikely to tear ligaments from a direct blow.

On April 13, 1977, plaintiff was examined by Dr. Gross who gave his opinion that plaintiff suffered a bruise to his left knee as a result of the accident, but suffered no injuries to the ligaments or meniscus as a result of the accident. Dr. Gross did observe some degenerative changes and arthritic conditions in plaintiff's knee but stated that they were the result of plaintiff's athletic injuries and surgeries.

The jury was given a verdict form to use which included this statement: "We the Jury duly impaneled and sworn in the above entitled cause do find for the plaintiff and against the defendant and assess the plaintiff's damages at _____." In returning its verdict the jury did not fill in the blank space, but instead indicated the following in the lower left-hand corner of the form:

"Auto damage                              $358.28
"Lost time                                  500.00
"Medical Expenses & times & Mileage        $75.00
"Future                                       0."

The sole question on appeal is whether this verdict was irregular, inconsistent, inadequate, contrary to law, or otherwise defective. Plaintiff argues that it is because it awarded plaintiff nothing for his injuries, disability, or pain and suffering, while awarding him damages for lost time and medical expenses.

"A verdict will not be vacated on the ground of irregularity if a construction is possible which will make it effective rather than void." Abrams v. Lange, 158 Neb. 512, 63 N. W. 2d 781 (1954).

We find nothing irregular or inconsistent with this verdict. The evidence on the cause, nature, and extent of plaintiff's injury was conflicting. The jury could have reasonably concluded that plaintiff suffered only a bruise to his knee as a result of the accident on December 19, 1975, and that this accident caused him no permanent injury or disability. The jury could reasonably have concluded that plaintiff

experienced no pain and suffering, or if he did, that it was de minimis. The jury could reasonably have concluded that the injuries which plaintiff subsequently complained of were not caused by the accident of December 19, 1975, but were instead caused by strain to his knee, weakened by past injuries and surgery, from his various athletic activities. The jury could have concluded that the amounts awarded for lost time and medical expenses were sufficient compensation for whatever damages may have been suffered. See, Jahnke v. Smith, 56 Wis. 2d 642, 203 N. W. 2d 67 (1973); Randles v. Lowry, 4 Cal. App. 3d 68, 84 Cal. Rptr. 321 (1970).

Under the circumstances and evidence of this case, it was not improper for the jury to award plaintiff damages for lost time and medical expenses, but no damages for his injury, disability, or pain and suffering. In light of the evidence, it can not be said that the jury's award was inadequate. It was error for the District Court to sustain plaintiff's motion for a new trial and to grant him a new trial on the issue of damages.

The judgment of the District Court is reversed and the cause is remanded with directions to reinstate the verdict of the jury and enter judgment for plaintiff thereon.

REVERSED AND REMANDED
WITH DIRECTIONS.