**Margaret RAZE, Respondent,**

v.

**Yvonne MUELLER, petitioner, Appellant.**

No. C2–97–865.

Supreme Court of Minnesota.

Jan. 7, 1999.

Cousineau, McGuire & Anderson, Chtrd., Michael D. Barrett, Andrea E. Reisbord, Minneapolis, for appellant.

The Trenti Law Firm, Joseph F. Lyons-Leoni, Karl J. Peterson, Edina, for respondent.

## OPINION

PAGE, Justice.

This case arises out of an October 16, 1994, motor vehicle accident involving appellant Yvonne Mueller and respondent Margaret Raze. The case was tried to a jury, which found Mueller 100% causally negligent for the accident and awarded Raze damages for past and future medical expenses and lost wages, but not for future loss of earning capacity or for past or future pain and suffering. Raze moved for a new trial or for additur, claiming the jury erred by awarding her damages for past and future medical expenses while failing to award damages for pain and suffering. The trial court denied the motion, reasoning that, on the evidence presented at trial, the jury could have found that Raze's pain and suffering was the result of her pre-accident physical problems, coupled with a functional overlay.

Raze appealed to the court of appeals which affirmed on the issue of liability, but reversed and remanded as to damages. In doing so, the court of appeals concluded that the jury's award of damages for medical care was inconsistent with its failure to award damages for pain and suffering. Because we conclude that the jury's verdict can be reconciled with the evidence, we reverse.

The relevant evidence presented at trial can be summarized as follows. On Sunday, October 16, 1994, the car Raze was driving was stopped behind several cars at an intersection in Anoka, Minnesota, when it was rear-ended by the car driven by Mueller. The impact pushed Raze's car into the car in front of her, which was being driven by David Cross. When Cross asked Raze how she was, Raze indicated that her neck hurt and her left arm stung. When Mueller asked if she was okay, Raze said "I don't know." Raze, however, declined an ambulance. Because Raze's car was undriveable, Cross gave her a ride home. Later that day, Raze's daughter drove Raze to the emergency room at Mercy Hospital, where the emergency room physician took x-rays of her spine, prescribed Motrin for her pain, indicated that she could return to work on October 20, 1994, and sent her home.

According to Raze, she felt "terrible pain" and "could hardly move [her] neck or [her] shoulders" after the accident. Instead of returning to work on October 20th, Raze saw Dr. Tara Fleming, a chiropractor, at Abeler Chiropractic Clinic. After discussing Raze's medical history[1] and performing a physical examination, Dr. Fleming concluded that Raze suffered from decreased ranges of motion in her neck, had palpable spasms, and felt pain from her skull to her lower midback. Dr. Fleming treated Raze for these symptoms from October 20, 1994, to January 9, 1997. Raze did not return to work until August 21, 1995, and since that time, Raze has continued to experience daily headaches, tightness in her neck, and pain in her shoulders, but has not missed any work because of physical problems related to the accident.

When Raze began to complain of ongoing severe right shoulder pain in January 1995, Dr. Fleming referred her to Dr. Kendall W. Goodian, an orthopedic chiropractor. Dr. Goodian diagnosed Raze's shoulder condition as possible rotator tendonitis with impingement syndrome and bursitis and recommended that Raze have an MRI.

As a result of the MRI, Raze was referred to Dr. Donald B. Miller, an orthopedic surgeon specializing in shoulder and knee injuries. Dr. Miller diagnosed Raze's right shoulder problem as chronic impingement syndrome and right rotator cuff complex. His evaluation of Raze's condition did not include a review of her medical records from before the accident. To correct the right shoulder problem, Dr. Miller performed surgery to burr down part of the shoulder bone and to remove scar tissue.

At trial, in addition to pain and suffering, Raze sought damages for past medical expenses in the amount of $18,519.70, future medical expenses, and lost wages for the 10 months she was off work. The jury did not award anything for pain and suffering. It awarded $6,899 for past medical expenses and $3,150 for future medical expenses. The award for past medical expenses included $6200 for chiropractic care, $475 for the emergency room visit, and $224 for a referral for Raze's headaches and excluded every expense relating to Raze's right shoulder problem. Finally, the jury awarded Raze $276 for lost wages, apparently compensating her only for the three days of work she missed between the day of the accident and the day the emergency room physician said she would be able to return to work.

Dr. Fleming testified that Raze has some permanent injury to her neck, low back, and right shoulder; that the motor vehicle accident prematurely accelerated the normal degenerative changes in Raze's body so that Raze would be susceptible to arthritis and "flare-ups"; and that the flare-ups in her neck, low back, and right shoulder would require chiropractic care every 2 to 3 months at a cost of $60 to $100 per session. Dr. Miller testified that Raze suffered from a permanent disability to her right shoulder as a result of the motor vehicle accident. Dr. Miller based his testimony on his understanding that Raze had not experienced any problems with her shoulders prior to the motor vehicle accident, and that her symptoms started almost immediately after the accident.

Dr. Elmer Salovich, an orthopedic surgeon, testified on behalf of the defense. According to Dr. Salovich, he evaluated Raze's complaints by performing a physical examination, taking her medical history, and reviewing her medical records. With respect to Raze's right shoulder, Dr. Salovich diagnosed Raze as having subacromion impingement syndrome caused by a congenital anterior sloping of the bone on top of the shoulder joint and subacromial bursitis of the shoulders caused by aging and repetitious use of the shoulder. Based on his evaluation of Raze,

1. Raze's history of medical problems involving her back, legs, neck, and head began in 1987. On February 25, 1987, Raze went to Abeler Clinic for weakness in her low back, shooting pain down the right front of one of her legs, and right knee pain. Raze underwent a total of 19 treatments for her pain. Raze consulted doctors numerous times in 1990 and 1991 about pain in her back, buttocks, legs, and head. On March 1, 1991, a CT scan of the lumbar region indicated possible disc problems. Eventually doctors discovered an L4–5 disc herniation, and determined she had a permanent injury to her back, for which she received workers' compensation benefits.

Dr. Salovich concluded that the motor vehicle accident did not cause injury to Raze's right shoulder and that the surgery performed by Dr. Miller corrected her shoulder impingement. Dr. Salovich also concluded that Raze sustained a mild fascial strain to the neck and experienced a voluntary 10 percent loss of range of motion in her neck and back,[2] but did not suffer a permanent injury. Finally, Dr. Salovich concluded that most of Raze's neck symptoms were the result of a functional overlay, which is a psychological condition that occurs when a patient attributes physical symptoms to a specific event for secondary gain.

On appeal from a denial of a motion for a new trial, an appellate court should not set aside a jury verdict "unless it is 'manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict.' "[3] An appellate court must reconcile the special verdict answers in a "reasonable manner consistent with the evidence and its fair inferences."[4] The verdict should stand if the answers can be reconciled on any theory.[5] In a number of cases we have said that when the plaintiff proves "substantial damages," the jury must award more than a mere nominal amount for general damages,[6] but we also emphasized

the fact that the adequacy of a verdict rests within the discretion of the trial court.[7] Applying these principles to the facts of this case leads to the conclusion that the jury's verdict here was not manifestly and palpably contrary to the evidence viewed in the light most favorable to the verdict and that the court of appeals erred in its conclusion that the jury's award for medical care was inconsistent with its failure to award damages for pain and suffering.

When there is conflicting medical testimony as to the nature and extent of a plaintiff's injuries, we give great deference to the jury's verdict.[8] Here, the jury's verdict can be reconciled with the evidence in the record and the fair inferences from that evidence. Raze claims she suffered injuries to her neck, back, and shoulder as a result of the motor vehicle accident. However, in examining the expert medical testimony regarding Raze's injuries,[9] we conclude that the jury, based on Dr. Salovich's testimony, could have reasonably concluded that Raze sustained only a mild fascial strain to her neck as a result of the accident; that the accident caused no injury to her right shoulder; that she did not suffer from any permanent injury as a result of the accident; that

2. In describing the findings of his physical examination of Raze, Dr. Salovich testified that "she restricted approximately ten percent of normal motion of her neck because of a complaint of discomfort of her neck" and that "there is [sic] no abnormal objective physical findings to support the symptoms [Raze has in] her neck." In responding to the question "[In your examination, you found] a ten percent loss of range of motion in the back?", Dr. Salovich responded, "Voluntary, yes."

3. *Roemer v. Martin*, 440 N.W.2d 122, 124 (Minn. 1989) (citation omitted); *see also Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn. 1980).

4. *Reese v. Henke*, 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967).

5. *Id.*

6. *See Levienn v. Metropolitan Transit Comm'n*, 297 N.W.2d 272, 273–74 (Minn.1980) (citing *Seydel v. Reuber*, 254 Minn. 168, 173, 94 N.W.2d 265, 269 (1959)). *See also Walser v. Vinge*, 275 Minn. 230, 235, 146 N.W.2d 537, 540 (1966) (concluding that a jury must take into consider-

ation all of the elements of damage which the plaintiff proved); *Brannan v. Shertzer*, 242 Minn. 277, 283–84, 64 N.W.2d 755, 759–60 (1954) (determining that the plaintiff did not prove substantial general damages because "her symptoms and ailments antedated the accident and were in no way related to it.").

7. *See Krueger v. Knutson*, 261 Minn. 144, 159, 111 N.W.2d 526, 536 (1961) (determining that the trial court is in the best position to determine the adequacy of a verdict). *See also Brannan*, 242 Minn. at 284, 64 N.W.2d at 759–60 (concluding that it was within the province of the jury to find that the plaintiff's symptoms pre-dated the accident).

8. *See Kinning v. Sutton*, 300 Minn. 555, 555–56, 220 N.W.2d 485, 486 (1974) (deference will be given to a jury's verdict where it "appear[s] that the damages awarded were [not] given under the influence of passion and prejudice").

9. *See Krueger*, 261 Minn. at 159, 111 N.W.2d at 536 (citations omitted) (concluding that the jury must determine the weight to give to medical expert opinions).

some of the problems with her neck, back, and shoulders were the result of her pre-existing condition or a functional overlay; and that, while she might require some minimal follow-up care related to the accident, that care would be fully compensated by awarding some future medical expenses to alleviate any residual discomfort.[10] Based on these facts, we hold that the jury's award of past and future medical expenses without an award of damages for pain and suffering was not so inadequate as to require the conclusion that the trial court abused its discretion in denying Raze's motion for a new trial.

Reversed.

---

**10.** *See, e.g., Hunter v. Sorensen,* 201 Neb. 153, 266 N.W.2d 529, 533 (Neb.1978) (finding the jury could reasonably have concluded plaintiff experienced no pain and suffering or de minimis pain and suffering); *Jahnke v. Smith,* 56 Wis.2d 642, 203 N.W.2d 67, 73 (1973) (finding the jury could have concluded the amounts awarded for lost time and medical expenses were sufficient compensation for whatever damages may have been suffered).