*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1055**

Kaytee Hooser, et al.,
Respondents,

vs.

Keith Anderson,
Appellant.

**Filed May 4, 2015**
**Affirmed in part, reversed in part, and remanded**
**Hudson, Judge**

Big Stone County District Court
File No. 06-CV-12-62

Ronald R. Frauenshuh, Jr., Ortonville, Minnesota (for respondents)

David C. McLaughlin, Fluegel, Anderson, McLaughlin & Brutlag, Ortonville, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Smith, Judge.

**HUDSON**, Judge

In this appeal following jury trial and entry of judgment, appellant argues that the evidence is insufficient to support the jury's findings of fact and that the damages awarded are excessive. He also contends that the district court did not properly review the punitive damages award before entering judgment. We affirm in part, reverse in part, and remand.

## FACTS

From November 2010 until September 2011, respondents Kaytee Hooser and Garrett Heisinger rented a home that was owned by appellant Keith Anderson. The parties did not enter into a written lease agreement before respondents moved in, but agreed that respondents would paint and clean the house and that they would pay "a little higher" rent than they paid for an apartment that they previously leased from Anderson.

The relationship between respondents and Anderson began to deteriorate after respondents moved into the home. Respondents observed several problems with the home, including issues with the furnace, electrical outlets, and faucets. They asked Anderson to repair the problems and attempted to hire an electrician to fix the outlets. Anderson did not make the repairs and canceled the electrician's appointment without notifying respondents. Because of Anderson's actions, respondents stopped paying their rent.

In March 2011, Anderson appeared at respondents' home and demanded that they pay rent. Respondents refused, and told Anderson that they would not pay rent until he

completed the requested repairs. Approximately one month later, Anderson returned and again demanded that respondents pay rent. Hooser refused and again asked Anderson when he would make the requested repairs. She testified that Anderson became irritated and called her a squatter in front of her ex-husband.

A few months later, Anderson placed an eviction notice on the hood of Hooser's car. Anderson did not take any additional legal action on the eviction notice, but Hooser signed a "standard" written lease for the home shortly thereafter. The written lease, which was retroactive to May 1, 2011, required that respondents pay monthly rent of $350 and that Anderson provide 24 hours' notice before entering the property.

In July 2011, Anderson brought a second eviction action. The eviction court found that respondents had not paid full rent for the month of June or any rent for the month of July, but concluded that Anderson did not meet his burden to show that the eviction action was not retaliation for respondents' complaints regarding the condition of the home. The eviction court ordered that respondents could retain possession of the premises, but indicated that, if Anderson made the necessary repairs, respondents would be required to pay their rent in full.

After the July eviction hearing, Anderson began to show the home to prospective buyers. Respondents testified that he or a prospective buyer showed up multiple times with little or no warning. Respondents also testified that, when they complained about the lack of notice, Anderson told them that he was not required to give notice. Shortly thereafter, Anderson informed respondents that he had sold the home and that respondents needed to vacate the premises. Respondents moved most of their property

3

out in late September, but left behind some family heirlooms and a used washer and dryer that they recently purchased. When respondents returned to the home to retrieve those possessions, they discovered that Anderson had locked that property in the front porch. Respondents contacted Anderson and he agreed that they could pick up their property a few days later.

Heisinger testified that when he returned to retrieve the remaining property, there was a new tenant in the home who denied him entry. He called Anderson, who became "irate" and drove over to the house. When Anderson arrived, he pointed a baseball bat at Heisinger and they began to argue about debris and garbage that was located behind the home. As the argument escalated, Anderson began to strike Heisinger with the bat, causing bruising on Heisinger's face, shoulder, forearms, and hands. An eyewitness to the confrontation testified that he pulled Anderson away from Heisinger after he heard Heisinger yell "help me," and that Heisinger appeared disoriented after the assault. Hooser testified that she never obtained the property that Anderson had locked in the home.

The day after the altercation, Anderson went to Hooser's place of employment, an assisted living facility, and told his parents, who lived at the facility, that Hooser's boyfriend had beat him up and that she should not be allowed to care for them. Hooser quit her job shortly thereafter. She testified that she was informed that she was not allowed to care for Anderson's parents or other people that lived in his parents' wing, and that she was humiliated by his statement.

4

Respondents filed suit against Anderson, asserting as causes of action: battery, conversion, intrusion upon seclusion, and defamation. Before trial, they moved to amend the complaint to include a request for punitive damages, and the district court granted their motion. The jury awarded Hooser actual damages of $28,000 and punitive damages of $30,000 and Heisinger actual damages of $16,000 and punitive damages of $25,000. The district court entered judgment in those amounts. Anderson subsequently filed a letter requesting permission to file a motion for reconsideration, which the district court denied. This appeal follows.

## DECISION

### I

Anderson argues that the evidence is insufficient to sustain several of the jury's findings of fact and that the damages awarded by the jury are excessive. Because he did not file a motion for new trial, our review is limited to substantive legal issues properly raised in and considered by the district court, whether the evidence supports the findings of fact, and whether those findings support the conclusions of law and judgment.[1] *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.,* 664 N.W.2d 303, 308–310 (Minn. 2003); *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). On review, we do not set aside the jury's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. "To conclude that findings of fact are clearly erroneous we must be left with the definite and firm conviction that a mistake has been

---

[1] Anderson previously filed a motion with this court requesting that his letter requesting permission to file a motion for reconsideration be construed as a motion for new trial. This court denied that motion.

5

made." *Rasmussen v. Two Harbors Fish Co.,* 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted). We will uphold the verdict if the jury's answers "can be reconciled on any theory." *Raze v. Mueller*, 587 N.W.2d 645, 648 (Minn. 1999).

Damages are a question of fact for the jury to decide based on the evidence, and wide deference is accorded to a jury's finding as to how much money will adequately compensate the plaintiff. *Koehler v. Kline*, 290 Minn. 485, 487, 185 N.W.2d 539, 541 (1971). We will set aside a damage award if it is "manifestly and palpably contrary to the evidence," when viewed in a light most favorable to the verdict. *Levienn v. Metro. Transit Comm'n*, 297 N.W.2d 272, 273 (Minn. 1980). An award of damages is excessive when it "so greatly exceed[s] what is adequate as to be accountable on no other basis than passion and prejudice." *Dallum v. Farmers Union Cent. Exch., Inc.*, 462 N.W.2d 608, 614 (Minn. App. 1990) (quotation omitted), *review denied* (Minn. Jan. 14, 1991). We examine Anderson's claims regarding each cause of action in turn.

*Invasion of privacy*

On the invasion-of-privacy claim, the jury awarded Hooser actual damages totaling $10,500 and Heisinger actual damages totaling $5,000. Anderson argues that the damages awarded for invasion of privacy are excessive and that the jury's findings of fact are clearly erroneous because there was insufficient evidence to demonstrate that Heisinger was present when the intrusion occurred and because the evidence demonstrated that he was not required to provide respondents any notice before arriving at the home.

As relevant here, a party seeking to prove a claim of invasion of privacy must demonstrate that the defendant intentionally intruded upon the plaintiff's seclusion in a manner that would be highly offensive to a reasonable person. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233–35 (Minn. 1998) (adopting Restatement (Second) of Torts definition of intrusion upon seclusion). To establish a right to seclusion, the plaintiff must demonstrate a reasonable expectation of seclusion or solitude in the place intruded upon. Restatement (Second) of Torts § 652B cmt. c (1977). The district court instructed the jury that it should consider respondents' past and future mental distress when assessing damages.

Here, respondents testified that, on several occasions, Anderson appeared at the home while they were present and without their permission. They also testified that they asked Anderson to provide notice before appearing at the home and that Anderson told them he was not required to provide notice. Respondents' testimony demonstrates that they possessed a reasonable expectation of seclusion in their home, that Anderson's actions violated their right to seclusion, and that his conduct caused respondents mental distress. The jury's verdict demonstrates that it believed respondents' testimony and we defer to the jury's credibility findings. *Cox v. Crown CoCo, Inc.*, 544 N.W.2d 490, 497 (Minn. App. 1996).

The fact that some incidents occurred before the parties expressly agreed that Anderson would provide them notice before entering the property does not render the jury's findings clearly erroneous. Respondents testified that Anderson showed up unannounced to the house on multiple occasions, both before and after he and Hooser

7

agreed to the notice term. Moreover, though Anderson owned the house where respondents lived, the possessor of property has a right of possession that is superior to the owner's, provided that the possessor has a valid lease agreement. *Cf. Neilan v. Braun*, 354 N.W.2d 856, 859 (Minn. App. 1984) (concluding that a tenant farmer in possession of land may sue owner of land for trespass). Thus, even absent an express notice provision in the parties' lease agreement, the jury could still conclude that respondents retained their right to seclusion, even from their landlord. We therefore conclude that there is sufficient evidence to support the jury's findings of fact and the damages awarded for invasion of privacy.

*Conversion*

The district court instructed the jury to calculate damages for conversion based upon "the value of [Hooser's] personal property at the time [Anderson] exercised control over' or deprived her of it. The jury awarded Hooser actual damages of $2,500 and punitive damages of $5,000. Anderson argues that there is insufficient evidence in the record to establish the value of the converted property. We agree.

"The measure of damages for conversion is the fair market value of the . . . goods at the time of the conversion, plus interest from that date." *Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W.2d 81, 86 (Minn. App. 1985), *review denied* (Minn. Jan. 31, 1986). Here, respondents were not asked, and did not testify, about the value of the converted property. They indicated that they purchased the washer and dryer from a relative, but did not testify what they paid for it. There is no other evidence in the record that reasonably supports the damages awarded for the converted property. Thus, the

8

jury's award of damages was based upon its own speculation. Damages that "are remote and speculative cannot be recovered." *Jackson v. Reiling*, 311 Minn. 562, 563, 249 N.W.2d 896, 897 (1977). We therefore reverse the actual and punitive damages awarded for conversion.

*Defamation*

Anderson also contends that the evidence is insufficient to support the jury's findings of fact relevant to Hooser's defamation claim. At trial, respondents argued that Anderson made two defamatory statements: (1) he called Hooser a squatter in front of her ex-husband (the first statement) and (2) he told his parents and other residents at Hooser's workplace that Hooser should not care for them because her boyfriend had beat him up (the second statement). The district court instructed the jury that, if it found that respondents had proven the elements of defamation, damages were presumed and could be awarded for mental distress, embarrassment, and humiliation. The jury found that Anderson defamed Hooser, awarded her $15,000 in actual damages, and found that Anderson did not defame Heisinger. The jury was not instructed to specify which statement it found to be defamatory; thus, we review whether the evidence is sufficient to support the jury's findings regarding either statement.

A defamation claim is established when the plaintiff proves four elements: (1) the defendant made a statement that is communicated to somebody other than the plaintiff; (2) the statement is false; (3) the statement tends to harm the plaintiff's reputation and lower the plaintiff in the estimation of the community; and (4) the recipient of the statement reasonably understands that it refers to a specific individual. *State v. Crawley*,

9

819 N.W.2d 94, 104 (Minn. 2012). General damages are presumed when the defamatory statement is made orally and falls into one of the categories of defamation per se. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn. 1980). Statements that constitute defamation per se are those that: (1) affect a person in his or her business, trade, or profession; (2) accuse the person of having a loathsome disease; (3) charge a crime; and (4) accuse the person of committing sexual misconduct. *Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn. 1977).

Anderson first argues that respondents did not demonstrate that either statement constituted defamation per se. But whether a statement constitutes defamation per se is a question of law that we may review on appeal only if it was properly raised in and considered by the district court. *See* 4 *Minnesota Practice,* CIVJIG 50.20 use note (2006) (stating that "the question of what constitutes a crime involving moral turpitude, a loathsome disease, or serious sexual misconduct are typically questions of law for the court"); *Alpha Real Estate Co.*, 664 N.W.2d at 310. Because Anderson did not argue to the district court that those statements did not constitute defamation per se, he has waived review of that issue on appeal. *Alpha Real Estate Co.*, 664 N.W.2d at 310.

Anderson also contends that there is insufficient evidence to demonstrate that either defamatory statement was false. True statements, "however disparaging, are not actionable" in a defamation claim. *Stuempges*, 297 N.W.2d at 255. A statement is false if it is substantially inaccurate. *McKee v. Laurion*, 825 N.W.2d 725, 730 (Minn. 2013). Minor inaccuracies of expression or detail are immaterial to this determination and the plaintiff bears the burden of proving falsity in order to establish a successful defamation

10

claim. *Id*. Whether a statement is true or false is a question of fact decided by the jury. *Id*.

Anderson asserts that the first statement is true because Hooser did not pay rent during her tenancy. But a "squatter" is "someone who settles on property without any legal claim or title." *Black's Law Dictionary* 1439 (10th ed. 2014). And here, the eviction court expressly determined that Hooser retained the right to possess the premises without paying rent because Anderson did not make the repairs that she requested. The eviction court also concluded that Hooser could continue to remain on the premises and forgo paying rent until those repairs were completed. The eviction court's order demonstrates that Hooser possessed legal claim to the property and provides adequate support for the jury's finding that the first statement was false.

Anderson also maintains that the jury's findings of fact demonstrate that it found that the second statement was true. He argues that because the second statement accuses Heisinger of assault and because the jury found that Anderson did not defame Heisinger, the jury must have concluded that the second statement was true. But on review, we determine whether the jury's findings can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008). We will uphold the verdict if the jury's answers "can be reconciled on any theory." *Raze*, 587 N.W.2d at 648. Here, the jury's findings are easily reconcilable. When Anderson made the second statement, he did not refer to Heisinger by name, but instead called him "[Hooser's] boyfriend." The jury could have found that the second statement was false and still found that the statement did not defame Heisinger

11

because the recipients of that statement, the residents of the assisted living facility, would not know to whom Anderson was referring. *See Crawley*, 819 N.W.2d at 104 (stating that the recipient of the statement must understand who is referred to by the statement for it to constitute defamation). The jury's findings are reconcilable.

Finally, Anderson argues that there is insufficient evidence to support the jury's finding that Hooser was defamed by the second statement. We disagree. A statement is defamatory when it lowers a person's standing in the eyes of the community and deters others from associating with her. *Weissman v. Sri Lanka Curry House*, 469 N.W.2d 471, 472 (Minn. App. 1991). And defamation may be proven when "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Diesen v. Hessburg*, 455 N.W.2d 446, 450 (Minn. 1990) (quotation omitted). Whether the recipient of the statement understood it to defame another is a question of fact that the jury decides. *McKee*, 825 N.W.2d at 731.

Here, Anderson told others that Heisinger attacked him, and connected that statement to Hooser's character, implying that she was not fit to care for certain residents because of her association with Heisinger. An ordinary person would understand that the purpose of that statement was to lower Hooser's standing in the eyes of her employer and to deter residents from associating with her. The fact that Hooser's employer informed her that she was prohibited from caring for residents in that wing is evidence that the recipients of that statement understood it to defame her. We therefore conclude that the jury's findings of fact relevant to Hooser's defamation claim are supported by the evidence.

12

*Battery*

Following trial, the jury awarded Heisinger $7,500 for past pain, disability, and emotional distress that he suffered from Anderson's striking him with a baseball bat. The jury also awarded him $3,500 for past healthcare expenses. Anderson concedes that there is sufficient evidence to support the jury's award for past healthcare expenses. But he argues that there is insufficient evidence to warrant damages for Heisinger's past pain, disability, and emotional distress.

Heisinger testified about the attack and the pain and distress that it caused him. An eyewitness indicated that he observed Heisinger on the ground, begging for help, and testified that Heisinger appeared "out of it" after that incident. Respondents also introduced pictures into evidence that documented the nature of the injuries that Heisinger suffered, as well as testimony from those who offered Heisinger medical assistance. Under these circumstances, the damages awarded are not manifestly and palpably contrary to the evidence. *See Johnson v. Ramsey Cnty.*, 424 N.W.2d 800, 805 (Minn. App. 1988) (concluding that testimony from witnesses and caregivers about a plaintiff's distress is sufficient to support jury's award of damages), *review denied* (Minn. Aug. 24, 1988). We therefore affirm the award of damages for battery.

## II

Finally, Anderson argues that the district court erred by failing to review the jury's award of punitive damages before entering judgment. The purpose of punitive damages is to punish the perpetrator, to deter repeat behavior, and to deter others from engaging in similar behavior. *Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001). Punitive

damages are permitted only upon clear and convincing evidence that the perpetrator showed deliberate disregard for the rights or safety of others.  Minn. Stat. § 549.20, subd. 1 (2014).  When that threshold showing is met, punitive damages may be awarded based on the following factors:

> the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons, and the severity of any criminal penalty to which the defendant may be subject.

*Id.*, subd. 3 (2014).  The district court is required to review any punitive-damages award in light of those factors and "make specific findings with respect to them."  *Id.*, subd. 5 (2014).

The district court found that the facts of each cause of action demonstrated that Anderson acted with "deliberate disregard for the rights or safety" of respondents.  But that finding is only a threshold finding that permits a party to present a punitive-damages claim to the jury.  *Id.*, subd. 1.  The district court must also evaluate the award itself by making findings on the factors enumerated in subdivision three of the punitive-damages statute.  *Id.*, subd. 3.  Because the district court did not do so before entering judgment,

we remand for the district court to make those findings.[2] *See Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 430 (Minn. App. 1996) (remanding for district court findings required by Minn. Stat. § 549.20, subd. 5), *review denied* (Minn. Oct. 15, 1996).

**Affirmed in part, reversed in part, and remanded.**

---

[2] Because we have reversed the actual and punitive damages awarded for conversion, the district court need not evaluate that award on remand.