STEPHEN YAKAVICZE *vs.* LAURIANS VALENTUKEVICIOUS.

Third Judicial District, Bridgeport, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

To call one a thief or a robber is ordinarily actionable *per se*, since the charge imputes the commission of a crime which involves moral turpitude and subjects the offender to infamous punishment; but if it is apparent from the context and attendant circumstances that no more was meant or intended by these epithets than that such person was a cheat and swindler, special damage must be proved to have resulted from the language used in order to entitle him to a verdict.

The defendant had been told by some member of a Lithuanian club to which both he and the plaintiff belonged, that the latter, as a member of one of its committees, had procured a United States license for the sale of liquors for $25 and had charged the club $27 therefor, and had otherwise misappropriated small sums belonging to the club. Believing this, he wrote an open letter to the club in which he stated that it was composed of "robbers, cheaters and such," and afterward, when called upon by the presiding officer at

a meeting of the club to tell who were intended, replied: "I can to-day tell you two of those thieves and robbers; there is one (pointing to the plaintiff). He cheated the club out of two dollars in connection with the purchase of the liquor license." In an action for slander it was *held:*—

1. That in view of the explanatory language, the words "thief" and "robber" merely characterized the plaintiff as a cheat and swindler, and, as such, were not actionable *per se.*

2. That their purport could not be extended by *innuendo* alleging that the defendant thereby meant to charge the plaintiff with having been guilty of the crimes of embezzlement and larceny.

To call one a cheat or a swindler is not actionable *per se* at common law unless spoken of the person in relation to his business or profession, or unless he is charged to have cheated by means of false pretenses or tokens.

Submitted on briefs April 18th—decided June 15th, 1911.

ACTION for slander, brought to the Court of Common Pleas in New Haven County and tried to the court, *Simpson, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*George E. Beers* and *Carl A. Mears,* for the appellant (plaintiff).

*Edward P. O'Meara,* for the appellee (defendant).

WHEELER, J. The plaintiff and defendant were members of the Lithuanian American Citizens' Club located in New Haven.

It was the duty of a committee of the club, of which the plaintiff was a member, to procure a United States license for the sale of intoxicating liquors. The defendant had been told by some officer or member of the club, and believed, that the plaintiff had procured said license for $25 and charged the club $27 for the same, and thereby cheated the club out of $2, and otherwise misappropriated small sums belonging to the club. The club, contrary to its by-laws, voted to suspend the de-

fendant until he paid the fine of the club and the cost, assessed at $15, of holding a special meeting, which had been called at the request of the defendant.

Thereafter the defendant sent the club a letter in which he said the "club is organized of a 'gang' of 'robbers' and 'cheaters, villains' and such," and signed himself "Your cheated member."

Subsequently the defendant was permitted to come into a regular meeting of the club "if he was going to pay his fine." The defendant acceded, and entered and paid his regular dues. The president then asked the defendant if he was going to pay his fine, and he said "no." The president replied, "Why not, you promised," and the defendant replied, "No, I didn't promise to pay." Upon the president telling him to take his seat and keep quiet, the defendant became excited and angry, and called the president vituperative names, and shook his fist at him. The president left the chair, and the vice-president took the chair and presided over the meeting, and asked the defendant to be quiet and take a seat; this he refused to do, and called the vice-president an insulting name. The vice-president then said: "Now you wrote the club a letter in which you called members of the organization thieves and robbers. Can't you tell who it is, thieves and robbers? Are you calling me?" The defendant asked that the books be examined, and said, "We'll see," to which the vice-president replied that the books were examined at half-yearly meetings. The defendant then said: "I can to-day tell you two of those thieves and robbers; there is one (pointing at plaintiff). He cheated the club out of two dollars in connection with the purchase of the liquor license"; and further stated that he had heard how he cheated the club. All of these statements were made in the Lithuanian language.

The defendant in his answer denied the charges of

the complaint, and by way of a second defense pleaded that the words were privileged, having been uttered in the course of an investigation by the club and in accordance with his duty as a member, and by way of a third defense pleaded that the words were uttered in response to inquiries induced by the plaintiff and were procured by fraudulent contrivances.

No special damage resulted from the use of the language complained of.

Words which charge a crime are only actionable in themselves when they charge a crime which involves moral turpitude, or subjects the offender to infamous punishment. *Hoag* v. *Hatch*, 23 Conn. 585, 590; 1 Swift's Digest, p. 481.

Expressions may be used which do charge a crime of this character, but the occasion may be one where there has been an interchange of opprobrious epithets, and where no hearer could possibly attribute the charge to anything except unseemly heat, nor credit it as meaning more than any other epithet of abuse from an angry tongue. 1 Swift's Digest, p. 487.

Defamatory language may be connected with other language in a way which explains that its use is not defamatory. It may be so attached to a subject or an event, as that it does not have the meaning which the words ordinarily import. *VanDaalen* v. *Power*, 147 Ill. App. 635, 638. To say of one, "You murdered my brother, he never intended to shoot you when he drew his pistol on you," is not a charge of murder, since the meaning of the charge is controlled by the occurrences which preceded and occasioned the killing.

So, to say of one, "You are a thief, you obtained your employer's horse by swindling him," is not a charge of theft, but of swindling. The charge is controlled by the subsequent language which shows that the charge is swindling,—trickery, not larceny.

Words, though actionable in themselves, may concern a transaction which constitutes no crime, or the circumstances be stated or known to the hearers which show that no crime was committed or intended to be charged.

A charge of a crime will be presumed to be intended unless the facts and circumstances attending its making indicate that there was no intent to charge a crime. *VanDaalen* v. *Power*, 147 Ill. App. 635, 638.

The charge made by this defendant was that the plaintiff was a thief and robber, since he had cheated the club out of $2 in connection with the purchase of the liquor license. In fact, the defendant intended to charge that the plaintiff, as a committee of the club, had charged the club $2 more than he had paid the government for its license, and that he had heard how he had cheated the club.

Whether the hearers at the time of the charge understood its full import the finding does not tell us. At the most, the charge was that the plaintiff had cheated the club out of $2. The designation "thief" and "robber" was limited by the subject of the transaction, which was the cheating. Cheating is not theft; it may be the result of overreaching, outwitting, sharp practices. Cheating is no more than swindling. It may embrace civil fraud, for which one is amenable to a civil, and not to a criminal, action. Cheating may offend the laws of morality without being legally cheating. Cheating by the common law is not actionable, unless spoken of the plaintiff in relation to his profession or business, or unless it be by false pretences or tokens.

Whether charging any form of cheating made a crime by our statute may be actionable *per se*, we need not now determine. No such form of cheating is alleged or found.

The only consideration for us is whether, under our

common law, cheating as here charged, is a crime, whose charge will of itself constitute actionable defamation.

"The word *cheat*," said Buller, J., "has always been holden not to be actionable, and *swindler* means no more; when a man is said to be *swindled*, it means tricked or outwitted." *Savile* v. *Jardine*, 2 H. Black. 531, 532; *Stevenson* v. *Hayden*, 2 Mass. 406, 408.

Of the words, "that he was a swindler; that he was dishonest; that he would defraud any person whenever he could procure an opportunity to do so; that he was a swindler and a cheat," the Supreme Court of Indiana said: "The complaint does not set forth any words that are slanderous *per se*. It is not slander *per se* to charge a man with fraud, or to say of him that he is a cheat or a swindler. The defamatory words charged in the complaint cannot be deemed to do more than characterize the appellant as a cheat and a swindler; they do not assert that he has been guilty of any crime." *Pollock* v. *Hastings*, 88 Ind. 248, 249, 250; *Odiorne* v. *Bacon*, 6 Cush. (Mass.) 185, 188; *Lucas* v. *Flinn*, 35 Iowa, 9, 11; *Weierbach* v. *Trone*, 2 Watts & S. (Pa.) 408; *Savage* v. *Robury*, 5 Mod. 398; *Bihler* v. *Gockley*, 18 Bradw. (Ill. App.) 496; *Nelson* v. *Borchenius*, 52 Ill. 236; Townshend on Slander & Libel (4th Ed.) pp. 171, 198.

Words charging dishonesty and rascality are not actionable of themselves. Calling one a rogue, a rascal, a scoundrel, a cozzener, or a villain, is no more actionable than to call him a cheat or a swindler. 25 Cyc. p. 266, and cases cited; Newell on Libel & Slander, p. 103, § 17.

The innuendo in the complaint, alleging that by the words used the intent was to charge the crimes of cheating, embezzlement, and larceny, cannot determine the meaning. The charge of embezzlement and larceny is to be read in connection with the facts explanatory of its meaning, and, if these crimes were not in fact charged, the words are not actionable of themselves, even

though by themselves without such explanation they be descriptive of a crime. *Hotchkiss* v. *Olmstead,* 37 Ind. 74, 80; *Pollock* v. *Hastings,* 88 Ind. 248.

"And even where words of specific import are employed, such as 'thief' or 'traitor,' still no action lies if the defendant can satisfy the jury that they were not intended to impute crime, but merely as general terms of abuse, and meant no more than 'rogue' or 'scoundrel.'" Newell on Slander & Libel, p. 103, § 17.

In view of our conclusion that the language used was not an actionable slander, there is no occasion to examine the merits of the special defenses or of the several objections to the evidence.

There is no error.

In this opinion the other judges concurred.