DOROTHY S. MOREY v. C. W. BARNES.[1]

February 27, 1942.

No. 33,080.

W. E. Hottinger, for appellant.
Willard Crowley and John V. Bumby, for respondent.

GALLAGHER, CHIEF JUSTICE.

Suit for libel, in which defendant had a verdict. Plaintiff appeals from an order denying her motion for new trial.

Plaintiff and her husband, Tony Morey, lived in rooms over a beer parlor and restaurant known as "Tony's Cafe" in Butterfield, Minnesota. The evidence is conflicting as to whether at the time here involved the cafe was owned and operated by plaintiff or her husband, or whether it was jointly owned and operated by them. It appears that plaintiff worked in the cafe with her husband and did all of the cooking.

Defendant owned and published the Butterfield Advocate, a weekly newspaper having a circulation of about 600 copies in and around Butterfield. On August 15, 1940, the Advocate published a contributed article in its "Open Forum" column which read:

"Butterfield, Minn.,
"August 13, 1940.
"Editor of the Butterfield Advocate.

[1] Reported in 2 N. W. (2d) 829.

"Dear Sir:

"Don't you think that it is time that Butterfield people cleaned up their town?

"On Wednesday night at the Farmers Day celebration three of the saloons had gambling games going full blast. In one of the brothels there was a dispute over the gambling which started a fight and a young farm hand was thrown out into the street by the proprietor and struck and knocked down with some kind of a weapon made of steel or iron which fits around the fingers. The young fellow laid there for half an hour with a fractured skull until some good soul happened along and called a doctor. The boy was taken to a hospital at St. James and he is still there. He did not regain consciousness until several hours after the affair and even now he does not know what is going on about him.

"A special policeman is said to have been there when this was taking place and that he did nothing about it. Also it is said that a member of the council who has been in office a long time, calls at one of the brothels every morning and gets a free half pint of liquor to sustain him during the day and this is his pay for protecting law evaders.

"None of the members of our family has ever been in any of these brothels but we hear from neighbors that one of them is known as the "Murder House," one is called "The Hole," and the other, the "Pest House." These are good names for such un-Godly places. Decent farmers should keep away from Butterfield until these places are closed and their proprietors jailed for long terms. It is even believed now that one of these hell-hole owners may not be a citizen of these United States. If it is found that this is true he ought to be deported.

"If your town must have saloons you should get men to run them who will observe the laws and who will not serve beer to school children and who will not have school children as bartenders.

"This is a matter for the county sheriff to look into and he also should attend to his business better than he is doing now. Your paper can be of tremendous good in your community and we hope you will help out by publishing this letter.

"A Farm Family."

Shortly after the publication of the article plaintiff served upon defendant a notice to retract, and defendant published a retraction in its edition of September 26, 1940.

It is conceded that Tony's Cafe is one of the places referred to in the article and that the fight took place in front of it. Defendant admits that he knew that Mrs. Morey lived in the building, but contends that the published article did not refer to her but to Tony's Cafe. It appears that Tony was convicted for participation in the fight on the occasion referred to in the article and that he had been convicted of liquor violations during prohibition days. There was testimony that the reputation of Tony's Cafe was bad and that the village council, after the incident in question, refused to issue a license for the sale of beer in the place. There was no testimony indicating that plaintiff was not a person of good character and reputation. At the close of the testimony plaintiff moved for a directed verdict, claiming that the use of the word "brothel" made the article libelous *per se* and that the only issue for the jury was the amount of damages. The trial court denied the motion and submitted to the jury under appropriate instructions the issues (1) whether the article imputed that plaintiff was an unchaste woman, and (2) the amount of damages, if any, to which plaintiff was entitled. There was no exception to the instructions and no request for other or additional instructions.

The only point urged here is that the published article was libelous *per se* and that the trial court should have granted plaintiff's motion for a directed verdict. It is contended that the use of the word "brothel" designated plaintiff's home as a house of prostitution and thus imputed unchastity to her.

It is only where a publication clearly defames a person that the court should instruct the jury that it is libelous as a matter of law. Sharpe v. Larson, 67 Minn. 428, 70 N. W. 1, 554; Alwin v. Liesch, 86 Minn. 281, 90 N. W. 404; Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 A. S. R. 810. To be libelous *per se,* words must be of such a nature that the court can say, as a matter of law, that they will tend to disgrace and degrade the party defamed or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned or avoided. Herringer v. Ingberg, 91 Minn. 71, 97 N. W. 460. If an article is not obviously defamatory but is reasonably susceptible of an innocent meaning, the question of libel or no libel is for the jury to decide under proper instructions. Odgers, Libel and Slander (6 ed.) p. 94; Sharpe v. Larson, *supra.* In deciding whether words will bear an innocent meaning, a writing must be construed as a whole without taking any word or phrase out of context, or placing undue emphasis upon any one part. Tawney v. Simonson, Whitcomb & Hurley Co. 109 Minn. 341, 124 N. W. 229, 27 L.R.A.(N.S.) 1035; Prosser, Torts, § 91, p. 790; Odgers, Libel and Slander (6 ed.) p. 97. The words must be construed with other parts of the published matter. Johnson v. Force, 80 Minn. 315, 83 N. W. 182.

"Brothel" is defined as a "house of lewdness or ill fame; a house frequented by prostitutes"; or a "bawdyhouse." Webster's New International Dictionary (2 ed.) 1934. But words are not always used in their correct sense. Some persons, in a forced attempt at colorful expression, indulge in ill-advised use of inaccurate terminology; and an article written in that manner may or may not be libelous, depending on the occasion and circumstances and how it is understood by those reading it. This is well established in Australia Newspaper Co. Ltd. v. Bennett [1894] A. C. p. 284, an English case decided by the House of Lords. It was argued in that case that the use of the word "Ananias" necessarily imputed to the plaintiff willful and deliberate falsehood. Lord Herschell, L. C., said:

"Even admitting that the natural effect of the use of the word 'Ananias' standing alone would be to convey the imputation suggested, the learned judge appears to their Lordships, with all respect, to have lost sight of the fact that people not unfrequently use words, and are understood to use words, not in their natural sense, or as conveying the imputation which, in ordinary circumstances, and apart from their surroundings, they would convey, but extravagantly, and in a manner which would be understood by those who hear or read them as not conveying the grave imputation suggested by a mere consideration of the words themselves. Whether a word is, in any particular instance, used, and would be understood as being used, for the purpose of conveying an imputation upon character must be for the jury."

Flanagan v. Nicholson Pub. Co. 137 La. 588, 68 So. 964, L. R. A. 1917E, 510, Ann. Cas. 1917B, 402; Yakavicze v. Valentukevicious, 84 Conn. 350, 80 A. 94, Ann. Cas. 1912C, 1264; Fawsett v. Clark, 48 Md. 494, 30 Am. R. 481; Norton v. Ladd, 5 N. H. 203, 20 Am. D. 573.

The article in this case, although couched in loose phraseology, is directed at certain specific evils. It protests the gambling, drinking, and fighting allowed to prevail in the taverns of Butterfield. It criticizes the laxity of the law enforcement officials, and gives particular attention to a fight which occurred in the street outside Tony's Cafe. But it does not seem to regard prostitution as one of the evil conditions existing in Butterfield. Certainly it does not give that condition the treatment its relative seriousness would seem to deserve. The word "brothel" hardly fits into the general tenor of the article. Whether those reading it would understand it as imputing that plaintiff was a woman of unchaste character was properly for the jury.

The order appealed from is affirmed.