*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1133**

James L. Mandel,
Appellant,

vs.

Multiband Corporation, et al.,
Respondents.

**Filed March 28, 2016
Affirmed
Randall, Judge**[*]

Hennepin County District Court
File No. 27-CV-14-12877

Mark J. Briol, William G. Carpenter, Briol & Associates, PLLC, Minneapolis, Minnesota (for appellant)

Thomas C. Mahlum, Seth A. Nielsen, Robins Kaplan LLP, Minneapolis, Minnesota (for respondents)

        Considered and decided by Ross, Presiding Judge; Reyes, Judge; and Randall, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**RANDALL**, Judge

Appellant James L. Mandel seeks reversal of the district court's grant of summary judgment to respondents Multiband Corporation and Ron B. Hill, CEO of Goodman Networks Incorporated (Goodman). We conclude that no genuine issues of material fact exist on Mandel's claims. The district court did not err in applying the law. Affirmed.

## FACTS

Multiband is a home service provider for DirecTV. In that capacity, Multiband performs installations, upgrades and service work for DirecTV's residential customers. The DirecTV relationship is Multiband's primary source of revenue. Mandel began working as Multiband's CEO in 1998 and continued to work as its CEO after Goodman acquired Multiband as a subsidiary in August 2013. As part of the acquisition, Mandel and Multiband executed a new employment contract, effective on August 30, 2013, the closing date of Goodman's acquisition of Multiband.

Mandel's new employment agreement provided that, among other things, Mandel could be terminated "for [c]ause at any time." The agreement defined "cause," in relevant part, as:

> Commission by the Employee of [a] material act of dishonesty or fraud upon, or willful misconduct toward, the Company or any of its Affiliates or misappropriation of material Company property or corporate opportunities; as reasonably determined by the Board of Directors of the Company.

For purposes of Mandel's employment agreement, "the Company" was defined as Multiband. The for-cause provision was important because a termination for cause reduced Multiband's financial obligations to Mandel. For example, if Mandel was terminated for a reason other than for cause, Mandel would be entitled to a $1.4 million severance payment.

In June 2014, John Goodman (Goodman's Executive Chairman) and Hill were contacted by an investment banking firm about a potential sale of Multiband. Mandel's name was not mentioned by the investment banking firm, but Hill communicated to John Goodman that Mandel was probably behind the inquiry. After this initial communication, Hill received another inquiry from a different investment banking firm, again without mention of Mandel. Hill and Goodman considered the opportunities but ultimately decided not to pursue them.

Hill then initiated an investigation using Goodman's legal team and an outside consultant. The investigation team searched Mandel's e-mails and prepared a report based on those e-mails. After reviewing the report, Hill decided that he needed to take the matter to Goodman's board of directors. Before the board meeting, Hill and John Goodman spoke to Dave Baker of DirecTV and learned that Baker had recently met with one of the firms that had contacted Hill about Multiband. Baker indicated to Hill and John Goodman that Mandel was likely behind the meeting.

Late in the day on June 30, 2014, Hill sent the investigative report to Goodman's board, along with 35 pages of Mandel's e-mails. The Goodman board of directors met telephonically the following morning, July 1, 2014, and discussed the investigation. The

3

investigation report stated that Mandel had engaged in multiple infractions that warranted termination for cause. The e-mails that formed the report's basis included the following:

1. On May 30, 2014, Mandel e-mailed Robin Engelson of Sapphire Financial Group Multiband's current pro forma and future expense reductions under the name "Project Phoenix";

2. On June 3, 2014, Mandel e-mailed Engelson a teaser titled "More Then a Service Company", and the teaser contained Multiband's confidential financial information, including historical and predicted revenue;

3. On June 3, 2014, after e-mailing Engelson the teaser, Mandel wrote to her that this was a "'hail Mary'" but that "I'm willing to go after it quickly, if possible";

4. On June 11, 2014, Mandel e-mailed Anthony Guagliano of The Gores Group (an investment firm) Dave Baker's contact information and stated, "I believe [Baker] will be the appropriate resource for your line of questioning"; and

5. On June 12, 2014, Mandel e-mailed Scott Dunfrund of Houlihan Lokey (an investment firm) the same teaser he had previously sent to Engelson.

After discussing this information, the Goodman board voted unanimously to terminate Mandel for cause. The Goodman board was comprised of John Goodman, Hill, and three independent directors.

The Multiband board subsequently ratified the Goodman board's action by unanimous written action. Two of the three members of Multiband's board (John Goodman and Hill) were also members of Goodman's board, and the third was Goodman's COO. That same day, Hill hand-delivered a termination letter to Mandel. The letter outlined the various reasons for Mandel's termination and was supplemented by the same documents that were reviewed by the Goodman board.

4

Mandel later sued Multiband and Hill, alleging claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) defamation; (4) unpaid wages, severance, a bonus from 2013, and stock options under Minn. Stat. § 181.13 (2014); and (5) a declaratory judgment that Mandel is not bound by restrictive covenants and is owed severance, the 2013 bonus, and a pro-rated amount of his 2014 performance bonus.

After considerable discovery, Multiband and Hill moved for summary judgment on all of Mandel's claims. Mandel made numerous submissions in opposition to summary judgment, including two expert affidavits and reports. Multiband and Hill then moved to exclude the expert affidavits from consideration, arguing that they were inadmissible for several reasons under Minnesota Rules of Evidence 402, 403, and 702.

The district court granted Multiband and Hill's motion for summary judgment on all of Mandel's claims and dismissed the case with prejudice. In its order, the district court also determined that Multiband and Hill's motion to exclude Mandel's experts was moot.[1] This appeal follows.

## D E C I S I O N

A district court shall grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a

---

[1] The district court did not consider Mandel's expert materials in its decision. For purposes of this appeal, we assume that Mandel's expert submissions were admissible but conclude that, even when they are considered, summary judgment is appropriate.

5

judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review de novo the existence of genuine issues of material fact and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.*

A genuine issue of material fact does not exist if the "nonmoving party presents evidence . . . which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). The nonmoving party "must do more than rest on mere averments." *Id.* When, as here, the defendant moves for summary judgment, the motion must be granted when the record lacks proof of "an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).

## I.

To withstand summary judgment on his breach-of-contract claim, Mandel was required to demonstrate a genuine issue of material fact on the following elements: (1) the existence of a contract; (2) the performance of conditions precedent; and (3) the breach of the contract. *See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). "A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578-79 (Minn. App. 2004). We review matters of contract interpretation de novo. *Kvidera v. Rotation Eng'g & Mfg. Co.*, 705 N.W.2d 416, 420 (Minn. App. 2005). "[W]hen a contractual provision is clear and unambiguous, courts

should not rewrite, modify, or limit its effect by a strained construction." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). Language in a contract "is to be given its plain and ordinary meaning." *Kvidera,* 705 N.W.2d at 420 (quotation omitted).

## A. Pretext

Mandel argues that summary judgment should not have been granted on his breach-of-contract claim because material fact issues exist as to whether his termination for cause was a pretext for Goodman's cost-saving initiative. The district court reasoned that the majority of the Goodman board was unaware of any restructuring or cost-reduction efforts and there was no genuine issue of material fact on this point. We agree.

Mandel contends that the desire to cut costs at Goodman was the true reason for his dismissal. Mandel does not deny his actions but cites to preinvestigation e-mails and documents from Hill and John Goodman that discuss his potential termination, the potential termination of other Multiband executives, and the cost of effectuating those maneuvers. Mandel's argument on this point is not persuasive.

Mandel needed to go beyond "mere averments" and put "facts in the record giving rise to a genuine issue for trial." *See DLH*, 566 N.W.2d at 71 (quotation omitted). Mandel has not met his burden. Instead, he has relied on his characterizations of e-mails sent between John Goodman and Hill and the fact that he was the only executive listed on the restructuring plan as being terminated for cause. As the district court noted, Mandel provided no evidence that the three outside directors (the majority of the Goodman board) knew of restructuring discussions or that such matters were discussed at the termination

7

meeting. Both outside directors who were deposed by Mandel testified that, at the time of the July 1, 2014 meeting, they were unaware of any restructuring efforts at Goodman and restructuring did not factor into their decision to terminate Mandel for cause. Even considering the evidence in the light most favorable to Mandel, it does not transform legitimate restructuring discussions into a genuine issue of material fact on the existence of a scheme to terminate Mandel for cause. *See id.*

Mandel also argues that Minnesota law demands that "a jury must be permitted to determine whether the cause asserted for termination was the actual reason."[2] We disagree. None of the cases cited by Mandel make the broad statement of law that Mandel advocates. *See Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147-48 (Minn. 2002) (affirming use of CIVJIG 55.05, which defined cause and allowed jury to determine if employee was terminated for cause where employment contract did not define cause); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 630-31 (Minn. 1983) (affirming jury finding of lack of good cause where employee handbook changed at-will employment to one requiring good cause for dismissal and factual dispute existed on good-cause issue); *Kvidera*, 705 N.W.2d at 420 (for-cause determination set for trial after district court denied employer's motion for summary judgment); *Bolander v. Bolander*, 703 N.W.2d 529, 545-47 (Minn. App. 2005) (affirming denial of judgment notwithstanding the verdict where jury was instructed

---

[2] Mandel also requests that this court apply the approach announced in *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 895 (Mich. 1980). Under the *Toussaint* approach, the "question of whether 'cause' for termination actually exist[s] [is] for the fact-finder to decide." *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 659 (Iowa 2008). *Toussaint* has not been adopted in Minnesota, and we are not inclined to do so on these facts.

8

on what constituted cause under the employment agreement and evidence supported jury's determination that employee was not terminated for cause); *Harvet v. Unity Med. Ctr., Inc.*, 428 N.W.2d 574, 578 (Minn. App. 1988) (finding summary judgment inappropriate where fact issues existed as to whether terminated employee actually engaged in the behavior cited as the basis for her termination).

Although some of these cases allowed the jury to reexamine whether an employee's acts constituted cause, they do not abrogate contract-law principles or the obligation of the party opposing summary judgment to show a genuine issue of material fact for trial. Mandel's contract unambiguously provides that the board of directors is the proper decision-making body. *See Travertine Corp.*, 683 N.W.2d at 271. Further, nothing that Mandel has cited in the record, even when viewed in the light most favorable to him, creates more than a "metaphysical doubt" that the board's decision was a pretext for Goodman's cost-saving initiative. *See DLH*, 566 N.W.2d at 71. The district court properly granted summary judgment on this point.

**B.     Procedurally Reasonable**

Mandel next raises several arguments with respect to the board's termination process.

Mandel argues that the district court erred as a matter of law when it applied the business-judgment rule to its analysis of procedural reasonableness. We agree with the district court that Mandel's contract required procedural reasonableness. The district court erred in its application of the "business judgment rule" because Minn. Stat. § 302A.251 (2014) "sets forth the business judgment rule as a defense against director liability," and

this is not a case where director liability is at issue. *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 553 (Minn. 2008); *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003) (noting that the "business judgment rule was developed by state and federal courts to protect boards of directors against shareholder claims that the board made unprofitable business decisions"). That error does not preclude this court from affirming the district court. *See Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012) (stating that "we may affirm a grant of summary judgment if it can be sustained on any grounds").

Mandel also argues that the board's determination was unreasonable, and therefore a breach of contract, because the investigation was too short, the board did not deliberate long enough, and he was not allowed to respond to the allegations. We disagree.

Pursuant to Mandel's contract, Multiband could terminate Mandel for cause, so long as the grounds for cause were "reasonably determined by the Board of Directors." The contract contained no requirement that the board conduct an investigation of a certain length or that Mandel be allowed to respond. *See Pine River State Bank*, 333 N.W.2d at 631 ("Had the procedural disciplinary steps been honored, [the employee] might have corrected his deficiencies . . . and have kept his job."). The board members considered an investigative report prepared by counsel and substantiated by Mandel's e-mails before meeting by phone and unanimously terminating Mandel for cause, as it was allowed to do under the contract. There is no genuine issue of material fact as to the reasonableness of this process.

10

Mandel has not pointed to facts in the record that demonstrate that he was damaged by any alleged failure to conduct a lengthier investigation. A lengthier investigation would have done nothing more than uncover what the parties' extensive discovery revealed— more evidence of *Mandel's questionable conduct* in the form of dozens of text messages and additional e-mails. As a matter of law, summary judgment was warranted on this point. *See Jensen,* 688 N.W.2d at 578-79.

Mandel also cites to the two expert affidavits and reports he provided to the district court on the issue of the reasonableness of the board's investigation. We find the affidavits and reports do not create a genuine issue of material fact on the procedural reasonableness of the board's decision. Mandel's contract did not provide for a particular procedure or a procedure of a certain length, only that the procedure be reasonable. Mandel's experts do not change the fact that, as a matter of law, Mandel is not entitled to anything more than what was bargained for. *See Travertine Corp.,* 683 N.W.2d at 271.

Mandel also argues that his contract was breached because the Goodman board, instead of the Multiband board, made the initial for-cause determination. We acknowledge that, in contrast to what Mandel's contract demanded, the Goodman board made the initial for-cause determination. But we agree with the district court that Mandel cannot show damages flowing from the fact that the Goodman board as opposed to the Multiband board made the initial determination.

Two of the three members of Multiband's board sat on the Goodman board, and the third worked for Goodman. Mandel received more than he bargained for by having three independent board members, who constituted the majority of the Goodman board, involved

11

in the decision-making process. The uncontroverted evidence shows that Mandel was not damaged by any procedural discrepancies. *See Jensen,* 688 N.W.2d at 578-79.[3]

Viewing the evidence in the light most favorable to Mandel, we find that Mandel's procedural-reasonableness arguments rest on averments and assertions that do not create real doubt. Summary judgment for Multiband and Hill was proper. *See DLH*, 566 N.W.2d at 71.

## C.    Substantively Reasonable

Mandel also argues that a genuine issue of material fact exists on the issue of whether his conduct constituted cause as defined in his employment agreement. Mandel's employment agreement defined cause, in relevant part, as:

> Commission by the Employee of [a] material act of dishonesty or fraud upon, or willful misconduct toward, the Company or any of its Affiliates or misappropriation of material Company property or corporate opportunities; as reasonably determined by the Board of Directors of the Company.

To terminate Mandel for cause, the board needed to reasonably determine that Mandel had committed a "material act of dishonesty or fraud," "willful misconduct," or "misappropriation of material Company property or corporate opportunities."

---

[3] The district court reasoned that as the sole shareholder of Multiband, Goodman was entitled to act on the company's behalf under Minn. Stat. § 302A.201, subd. 2(c) (2014). We agree with Mandel that the district court erred because Goodman did not act in its capacity as shareholder. But as with the business-judgment-rule discussion above, this error does not preclude affirming the district court's summary-judgment order. *See Doe*, 817 N.W.2d at 163.

The undisputed facts show the following. Goodman purchased Multiband in August 2013. Within months, Mandel began his efforts to find a buyer for Goodman's recently-acquired subsidiary. Mandel did not consult with anybody at Goodman before he began this process and, importantly, secured no nondisclosure agreements from the parties with whom he was communicating. Mandel also directed one of his investment-bank contacts to speak with Baker of DirecTV, thus putting in peril Multiband's relationship with its top customer. When Hill began to understand the nature of Mandel's activities, he acted swiftly in launching an investigation and bringing the matter to Goodman's board. Based on the information presented to it, the board determined that Mandel's actions constituted cause and terminated him accordingly. As the district court aptly concluded, "it would have been unreasonable for a corporate board to conclude otherwise."

There is no genuine issue of material fact concerning whether the board reasonably determined that Mandel's actions constituted cause. The investigative report and supporting materials, the authenticity of which Mandel has not challenged, support the determination that Mandel engaged in material dishonest acts when he contacted outside parties about acquiring Multiband without consulting with anybody at Goodman, misappropriated material company property when he provided outside parties with confidential financial information, and engaged in misconduct through a combination of these actions.[4]

---

[4] Like the district court, we do not consider information obtained through discovery, but not before the Goodman board, when considering the substantive for-cause issue.

13

Mandel counters by citing to his own deposition and his expert affidavits. We are not persuaded. Mandel's deposition testimony is unsupported by any competent evidence that supports his assertion that he did not reach out to investment bankers and that he did not proceed without conferring with Goodman. "[M]ere averments" are insufficient for a party to withstand summary judgment. *DLH*, 566 N.W.2d at 71.

Importantly, Mandel's experts do not controvert the authenticity of the materials obtained in the investigation and do not dispute the confidentiality of the financial information that Mandel disclosed. Rather, Mandel's experts generally explain that it was within Mandel's duties as CEO and comported with his fiduciary responsibilities to express concern about Multiband's financial performance and its future existence. These assertions are immaterial to the issue of cause, as contractually defined, and thus are not sufficiently probative to allow reasonable minds to draw different conclusions. *See DLH*, 566 N.W.2d at 71; *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996) (noting that a fact is material only "if its resolution will affect the outcome of a case"). To the extent that Mandel's experts conclude that the investigative report does not identify any actions that meet the contractual definition of cause, such conclusory statements do not create a fact issue precluding summary judgment. *See Potter v. Pohlad*, 560 N.W.2d 389, 395 (Minn. App. 1997) (affirming summary judgment and stating that "the conclusory statements of an expert cannot sustain [appellant's] claim"), *review denied* (Minn. June 11, 1997).

Mandel's contract unambiguously provided that he could be terminated for cause as "reasonably determined" by the board. We discern no genuine issue of material fact on the reasonableness of the board's determination.

14

**D.     Good Faith and Fair Dealing**

Mandel also argues that the district court erred as a matter of law when it determined that the implied covenant of good faith and fair dealing has not been read into employment contracts in Minnesota.  We disagree.

Mandel cites *Hunt. v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 858-59 (Minn. 1986), for the proposition that the implied covenant of good faith has been held inapplicable only in the context of at-will agreements.  As Mandel notes, the *Hunt* court emphasized that, in the context of at-will agreements, "permanent employment" does not mean that the employer is obligated to "discharge only in good faith."  *Hunt*, 384 N.W.2d. at 858.  But the *Hunt* court went on to make a much broader statement of the law in Minnesota:  "Moreover, we have not read an implied covenant of good faith and fair dealing into employment contracts." *Id.*

Minnesota courts have consistently declined to read the implied covenant into employment contracts.  *See Nordling v. N. States Power Co.*, 478 N.W.2d 498, 503 (Minn. 1991) (noting that the Minnesota Supreme Court "has not made clear" whether the implied covenant of good faith and fair dealing exists in employment contracts); *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 885 (Minn. 1986) ("We have never decided whether such a condition of good faith is read into employment contracts."); *Guercio v. Prod. Automation Corp.*, 664 N.W.2d 379, 387 (Minn. App. 2003) ("Minnesota law has not read an implied covenant of good faith and fair dealing into employment contracts when considering a termination." (citing *Hunt*, 384 N.W.2d at 858); *Bradley v. Hubbard Broad., Inc.*, 471 N.W.2d 670, 675 (Minn. App. 1991) ("Minnesota courts have

15

consistently declined to read a good faith and fair dealing covenant into employment contracts."), *review denied* (Minn. Aug. 2, 1991); *Bratton v. Menard, Inc.*, 438 N.W.2d 116, 119 (Minn. App. 1989) (recognizing that "under Minnesota law there is no implied covenant of good faith and fair dealing in employment contracts" but remanding on the issue of whether the "employment handbook has modified the parties' employment contract to require good faith in discharge"), *review denied* (Minn. June 9, 1989).

Mandel did not cite Minnesota authority holding that the implied covenant of good faith and fair dealing applies to termination provisions in employment contracts. Summary judgment on this issue was warranted.

We find no genuine issue of material fact on Mandel's breach-of-contract and related implied-covenant claims and no material error in the district court's application of the law.

## II.

Mandel also disputes the district court's grant of summary judgment on his claims for unpaid bonuses, stock options, and wages, and his request for a declaratory judgment. Mandel agrees that these claims all "stand or fall with his contract claims." Because we conclude that the district court properly granted summary judgment to Multiband and Hill on Mandel's breach-of-contract claim, we do not consider Mandel's arguments on these claims.

## III.

Mandel next argues that the district court erred in granting summary judgment to Multiband and Hill on his defamation claim. Defamation plaintiffs in Minnesota must

16

establish four elements: "(1) the defamatory statement was communicated to someone other than the plaintiff; (2) the statement is false; (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community; and (4) the recipient of the false statement reasonably understands it to refer to [the plaintiff]." *McKee v. Laurion*, 825 N.W.2d 725, 729-30 (Minn. 2013) (quotations and citation omitted).

Mandel's defamation claim is based on communications between Hill and John Goodman, the contents of the investigative report, the contents of the termination letter, and communications from Hill and Goodman to representatives at DirecTV. We agree with the district court's conclusion that none of the statements are actionable because they are either protected by the qualified privilege or are true.

A statement falls within the qualified privilege if it is "made upon a proper occasion, from a proper motive, and . . . based upon reasonable or probable cause." *Lewis*, 389 N.W.2d at 889 (quotation omitted). "[S]tatements made in the course of an employer's investigation into employee misconduct are protected by the qualified privilege." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 923 (Minn. 2009). The qualified privilege extends to an employer's communication to an employee of the reason(s) for discharge. *Lewis*, 389 N.W.2d at 890. The question of whether the qualified privilege applies is a question of law. *Id.* at 889.

We conclude that the statements communicated among the Goodman board members, the investigative report, and in Mandel's termination letter are privileged. The intra-Goodman statements and investigative report were made upon a proper occasion and

17

with a proper motive because they occurred either immediately before, during, or after the official investigation into Mandel's activities. *See Bahr*, 766 N.W.2d at 923. After thoroughly reviewing the record, we find that these statements were made with a reasonable basis. *See Lewis*, 389 N.W.2d at 889. Additionally, the termination letter, which was provided to Mandel after the investigation and subsequent board action, falls squarely within the privilege. *See id.* at 890. Even though there may have been minor inaccuracies in certain communications, the presence of such inaccuracies does not defeat the application of the privilege in this context. *See id.* at 889. In sum, "the employer has an important interest in protecting itself and the public against dishonest or otherwise harmful employees," and these communications were made in furtherance of that interest. *See Bahr*, 766 N.W.2d at 923 (quotation omitted).

To overcome the existence and application of the qualified privilege, Mandel needed to establish a genuine issue of material fact that the statements were made with malice. *See id.* at 920. "Actual malice requires a showing that the defamatory statements are made . . . from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Id.* (quotations omitted). The statement itself or its alleged falsity cannot establish malice; rather, malice may be shown by "extrinsic evidence of personal spite, as well as by intrinsic evidence such as the exaggerated language . . ., the character of the language used, [and] the mode and extent of publication . . . ." *Bol v. Cole*, 561 N.W.2d 143, 150 (Minn. 1997). Summary judgment is appropriate when a defamation plaintiff fails to present evidence that raises a genuine issue of material fact as to the existence of malice. *Id.* at 150-51.

18

Mandel failed to raise a genuine issue of material fact with regard to the existence of malice. Mandel argues that the alleged scheme to terminate him for cause is sufficient evidence of actual malice and cites *Bradley*, 471 N.W.2d at 675, in support of his assertion. In *Bradley*, this court reviewed a jury's finding that the employer made certain statements with malice. 471 N.W.2d at 674-75. We held there that the evidence supported the jury's conclusion for two reasons. First, we noted the supervisor's memo that explicitly discussed "building the appropriate file" to effectuate the employee's termination for reasons other than the gross misconduct cited. *Id.* at 675. Second, we noted that the supervisor conducted no investigation before she "accused [the employee] of retrieving the memo from her wastebasket and caused the allegation of gross misconduct to circulate as office gossip." *Id.*

*Bradley* is inapposite. Unlike the plaintiff in *Bradley*, Mandel has shown no evidence of discussions about "building the appropriate file" to terminate him for any reason other than the reasons outlined in the investigative report and termination letter. *See id.* There were no preinvestigation rumors circulated about Mandel's activities; rather, information was sent only to board members and only after an investigation had been conducted. *See id.*

Although Mandel has cited to e-mails and other documents that discuss his possible termination, those matter-of-fact business discussions are not sufficiently probative of malice to create a genuine issue of material fact. *See DLH*, 566 N.W.2d at 70 (stating that reviewing courts are "not required to ignore [the] conclusion that a particular piece of evidence may have no probative value"). There is no genuine issue of material fact that

19

these statements are privileged. Summary judgment was appropriate. *See Bol*, 561 N.W.2d at 150-51.

Mandel next argues that the district court erred when it concluded that certain statements made to DirecTV were true and therefore not actionable. "Truth is a complete defense to a defamation action and true statements, however disparaging, are not actionable." *McKee*, 825 N.W.2d at 730 (quotation omitted). "The plaintiff has the burden of proving falsity in order to establish a successful defamation claim." *Id.* "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge is justified." *Id.* (quotations omitted). After thoroughly reviewing the record, we conclude that there is no genuine issue of material fact as to the truth of the allegedly defamatory statements made by John Goodman and Hill to DirecTV representatives.

Mandel failed to demonstrate the existence of a genuine issue of material fact, and the district court did not err in applying the law. Summary judgment on the defamation claim was appropriate. *See STAR Ctrs., Inc.*, 644 N.W.2d at 76-77.

**Affirmed.**